UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  02-80309-CIV-ALTONAGA

FRIENDS OF THE
EVERGLADES, *et al.*,

       Plaintiffs,

vs.

SOUTH FLORIDA WATER
MANAGEMENT DISTRICT, *et al.*,

       Defendants.

_____/

## ORDER

    **THIS CAUSE** came before the Court upon Chief Magistrate Judge Stephen T. Brown's Supplemental Report and Recommendation ("Supplemental Report") [ECF No. 801], entered on August 23, 2011.  On January 24, 2011, Defendants, Carol Wehle and the South Florida Water Management District ("SFWMD"), filed a Verified Motion for an Award of Costs ("Motion") [ECF No. 770], requesting costs of $27,210.48 upon resolution of their appeal in this matter by the Eleventh Circuit.  The Motion was referred to Magistrate Judge Brown pursuant to 28 U.S.C. § 636(b)(1) and the Local Rules of the United States District Court for the Southern District of Florida. (*See* [ECF No. 771]).  On April 13, 2011, Magistrate Judge Brown issued a Report and Recommendation ("Report") [ECF No. 781], recommending granting the Motion in part with respect to costs provided for in a mandate from the Eleventh Circuit (*see* Mandate [ECF No. 766]), and otherwise denying the Motion.  In light of objections filed by Defendants and Plaintiff-Intervenor, the Miccosukee Tribe of Indians of Florida ("Tribe"), the Court did not accept the Report, referring the Motion back to Magistrate Judge Brown for additional review.  (*See* [ECF No. 793]).

    In the Supplemental Report, Magistrate Judge Brown recommends granting the Motion for

Case No. 02-80309-CIV-ALTONAGA

costs in the full amount of $27,210.48, in favor of Defendants and against Plaintiffs, Friends of the

Everglades, Fishermen Against Destruction of the Environment, and The Florida Wildlife Federation

(collectively, "Plaintiffs"), and the Tribe, each equally responsible for $6,802.62. The SFWMD,

Plaintiffs, and the Tribe have all timely filed objections to the Supplemental Report. (*See* [ECF Nos.

802, 806, 807]).

## I. INTRODUCTION

Plaintiffs filed this citizens' suit against the SFWMD on April 8, 2002, alleging violations

of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.* (*See* Complaint [ECF No. 1]).

Specifically, Plaintiffs alleged that the SFWMD was pumping polluted canal water into Lake

Okeechobee without a National Pollution Discharge Elimination System ("NPDES") permit, in

violation of CWA sections 1311(a) and 1342. (*See id.* ¶ 4). The Tribe was granted leave to

intervene as a Plaintiff in December 2002. (*See* [ECF No. 40]). Later, the United States of America

intervened as a Defendant on behalf of the Environmental Protection Agency ("EPA") and the Army

Corps of Engineers. (*See* [ECF No. 263]). The Executive Director of the SFWMD, in his official

capacity, was added as a Defendant. (*See* [ECF No. 188]).

In 2006, the Court held a bench trial and ruled in favor of Plaintiffs and the Tribe, stating the

CWA required Defendants to obtain an NPDES permit for transfers between navigable waters. (*See*

Dec. 11, 2006 Order [ECF No. 636]). In the Order, the Court held that the language of the CWA

was unambiguous in requiring an NPDES permit for water transfers, and that no EPA interpretation

could alter such unambiguous meaning, including the interpretation in a then-proposed rule seeking

to clarify that transfers were not subject to NPDES permitting under the CWA. (*See id.* 83–84). The

Court recognized, however, that interpreting the relevant language of the CWA was "far from a

Case No. 02-80309-CIV-ALTONAGA

simple exercise." (*See id.* 58). The Court dismissed the SFWMD as a Defendant on grounds of Eleventh Amendment immunity, leaving the Director of the SFWMD as the sole remaining Defendant. (*See id*.).

In August 2007, Defendant, Carol Wehle, as Executive Director of the SFWMD, filed an appeal with the Eleventh Circuit Court of Appeals, naming all Plaintiffs and the Tribe as appellees. (*See* [ECF No. 710]). On June 13, 2008, while the appeal was still pending, the EPA issued a new regulation ("Regulation") to "clarify that water transfers are not subject to regulation under the [NPDES] permitting program." 40 C.F.R. § 122.3(i). In deciding the appeal, the Eleventh Circuit noted that "all of the existing precedent and statements in our own vacated decision are against the unitary waters theory" set forth by the SFWMD, under which a permit would not be required, and that "[i]f nothing had changed, we might make it unanimous." *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009). But the court continued, "there has been a change. An important one," referring to the new Regulation. *Id*. The court stated that the issuance of the Regulation presented a novel question, which was not before the undersigned at trial, of whether the Regulation was entitled to *Chevron*[1] deference. *Id*. The court held the relevant portion of the CWA was ambiguous, and the Regulation was a reasonable interpretation of the statute. *Id*. at 1227–28. The court thus reversed the Court's holding, finding in favor of Defendants. *Id*. at 1228. The court declined to address the issue of Eleventh Amendment immunity as moot. *Id*. at 1216.

Defendants, as the prevailing parties in the appeal, filed this Motion, attaching a bill of costs.

_____

[1] *Chevron, U.S.A., Inc. v. Nat'l Resources Def. Council, Inc.*, 467 U.S. 837 (1984).

Case No. 02-80309-CIV-ALTONAGA

(*See* Mot. Ex. [ECF No. 770-1]).  Defendants request payment from Plaintiffs and the Tribe of: (1) "Fees of the Clerk" of the Eleventh Circuit of $455.00 ("Clerk Fees"); (2) "Fees for printed or electronically recorded transcripts necessarily obtained for use in the case" of $26,213.68 ("Transcript Fees"); and (3) "Costs as shown on Mandate of Court of Appeals" of $541.80 ("Mandate Fees"), for a total amount of $27,210.48.  (*Id*.).  Defendants invoke 28 U.S.C. § 1920 and 33 U.S.C. § 1365(d) as entitling them to these three categories of costs.  (*See* Mot. 1).  As noted, Magistrate Judge Brown's Supplemental Report recommends granting the Motion for costs in the full amount of $27,210.48, holding each Plaintiff and the Tribe liable in equal amounts of $6,802.62. (*See* Supp. Rep. 9).

All parties timely filed initial objections to the Supplemental Report.  Plaintiffs object to the Supplemental Report by asserting that Magistrate Judge Brown erroneously rejected equitable considerations militating against an award of costs to the SFWMD, particularly in light of an intervening change in the law between the decision at trial and the appeal in the form of the new Regulation, and the SFWMD's potential role in effecting this supposed change in the law.  (*See* Pls.' Obj. and Resp. [ECF No. 806]).  Plaintiffs further assert that the equities favor apportionment of costs rather than joint and several liability.  (*See id.* 13–15).  Plaintiffs also state that the SFWMD's position prior to the new Regulation, embodied in the "unitary waters" theory, was not a longstanding position and was unsuccessful in the courts in any case, and that the SFWMD did not deny its role in advocating for the new Regulation.  (Pls.' Reply [ECF No. 813]).

The Tribe objects to the Supplemental Report on three grounds: (1) the SFWMD is not entitled to recover the costs of its transcripts; (2) the SFWMD is not entitled to the recover the fees of the Clerk of the Eleventh Circuit; and (3) the Tribe is not liable for any costs as an intervenor.

(*See* Tribe's Obj. [ECF No. 804]).  The Tribe further contends that the equities of the case weigh against joint and several liability, and in favor of apportionment.  (*See* Tribe's Resp. [ECF No. 810]). The Tribe also asserts that Plaintiffs were not "wholly unsuccessful" in their suit; the SFWMD prevailed on appeal due to a change in the law; and the SFWMD voluntarily assumed the cost of the trial transcripts.  (Tribe's Reply [ECF No. 812]).

The SFWMD objects to the Supplemental Report only to the extent Judge Brown recommends apportioning costs rather than awarding them jointly and severally.  (*See* SFWMD's Obj. [ECF No. 802]).  The SFWMD responds to the Plaintiffs and the Tribe's Objections by stating: (1) there was no intervening change in the law between the trial and the Eleventh Circuit decision; (2) Plaintiffs' tactics "took up most the trial" [sic] and were responsible for much of the costs; (3) the SFWMD voluntarily assumed the responsibility of paying up front for the trial transcripts, in the mutual understanding with Plaintiffs and the Tribe that the SFWMD would eventually be made whole; (4) joint and several liability is proper as Plaintiffs should be responsible for apportioning costs among themselves; and (5) the Tribe is still liable for costs, even as an intervenor.  (*See* SFWMD's Resp. [ECF No. 811]).

## II. ANALYSIS

When a magistrate judge's "disposition" has properly been objected to, district courts must review the disposition *de novo*.  FED. R. CIV. P. 72(b)(3).  If no party timely objects, however, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  FED. R. CIV. P. 72 advisory committee's notes (citation omitted).  In this case, the parties have timely submitted well-reasoned objections.  The Court therefore reviews the Supplemental Report *de novo*.

Case No. 02-80309-CIV-ALTONAGA

**A.     The SFWMD is presumptively entitled to its taxable costs.**

The SFWMD is presumptively entitled to its costs under 28 U.S.C. § 1920 ("Section 1920"), in conjunction with Rule 54 of the Federal Rules of Civil Procedure ("Rule 54") and Rule 39 of the Federal Rules of Appellate Procedure ("Appellate Rule 39").

### 1.     *Transcript Fees*

The SFWMD may presumptively recover the Transcript Fees[2] as a cost of trial under Rule 54(d), which provides, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1).  An item is taxable as a cost under Rule 54(d) if it is enumerated in Section 1920.  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 437–38 (1987).  Section 1920(2) provides that "[a] judge or clerk of any court of the United States may tax as costs . . . Fees for printed or electronically recorded transcripts necessarily obtained for use in the case . . . ."

Rule 54(d) "creates a presumption in favor of awarding costs to the prevailing party which the opponent must overcome."  *Woods v. Deangelo Marine Exhaust Inc.*, No. 08-81579, 2010 WL 4116571, at *1 (S.D. Fla. Sept. 27, 2010) (quoting *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991)).  As Judge Brown noted, the SFWMD is the prevailing party as "the litigant in whose favor judgment [was] rendered."  *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995).  Therefore, the SFWMD is presumed to receive the Transcript Fees as long as they are enumerated as a taxable cost under Section 1920.

The Transcript Fees are enumerated as a cost under Section 1920(2) because the trial

---

[2]  The Court refers to "Transcript *Fees*" as opposed to "Transcript *Costs*," because Section 1920 refers to this category of costs as "Fees."  Nevertheless, like the Clerk Fees and Mandate Fees discussed *infra*, these are indeed taxable costs, to be distinguished from attorneys' fees.

Case No. 02-80309-CIV-ALTONAGA

transcripts were "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). "[W]hile the cost of daily trial transcripts should not be allowed as a matter of course, a district court may award the cost of daily trial transcript where the length and complexity of a trial make the daily transcripts necessary." *Kearney v. Auto-Owners Ins. Co.*, No. 8:06-cv-00595, 2010 WL 1856060, at *4 (M.D. Fla. May 10, 2010) (citing *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1226 (11th Cir. 2002)). *See also Sensormatic Elec. Corp. v. Tag Co. US*, No. 06-81105-CIV, 2009 WL 3208549, at *4 (S.D. Fla. Oct. 2, 2009) (adopting magistrate judge's finding that daily trial transcripts were necessary "where trial lasted nearly four weeks, involved complex issues and expert testimony"). The trial in this matter spanned several months and involved many complex issues of fact, rendering transcripts necessary for use by all parties. The Court itself referred to the trial transcripts throughout its December 11, 2006 Order setting forth findings of fact. (*See* Dec. 11, 2006 Order). *See also Woods*, 2010 WL 4116571, at *7 (citing *Charter Med. Corp. v. Cardin,* 127 F.R.D. 111, 113 (D. Md. 1989) (awarding costs for daily transcripts where case presented complex issues, transcripts were necessary to prepare for cross examination of technical expert at trial, and the court viewed portions of the transcript in reaching its decision)). The SFWMD therefore is presumptively entitled to recover the Transcript Fees.

### 2.   *Clerk Fees*

The SFWMD is further presumptively entitled to recover the Clerk Fees under Appellate Rule 39, which like Rule 54 is read in conjunction with Section 1920. *See* FED. R. APP. P. 39 advisory committee's note (observing that "[s]tatutory authorization for taxation of costs is found in 28 U.S.C. § 1920"). Section 1920(1) provides that taxable costs include "Fees of the clerk and marshal." Appellate Rule 39(e)(4) specifically allows the district court to tax "the fee for filing the

7

notice of appeal." Although they are costs of appeal, costs enumerated in Appellate Rule 39(e) are "made taxable in the district court for general convenience." FED. R. APP. P. 39(e) advisory committee's note. *See also King v. Gowdy*, No. 02-CV-75136, 2008 WL 1820837, at *4 (E.D. Mich. Apr. 22, 2008) (holding that $455 appeal fee "is clearly a taxable cost," citing Section 1920(1) and Appellate Rule 39(e)(4)).

### 3.   *Mandate Fees*

Finally, none of the parties object to the SFWMD's presumptive entitlement to the Mandate Fees of $541.80, which the Eleventh Circuit taxed against the Appellees under Appellate Rule 39. (*See* Mot. Ex. 4).

### B.   The equities in this case overcome, in part, the presumption in favor of awarding taxable costs to the SFWMD.

Since the SFWMD is presumptively entitled to its taxable costs, the Court must award the SFWMD these costs unless equity dictates a different result. Plaintiffs and the Tribe contend Magistrate Judge Brown failed to adequately consider equitable factors which weigh against awarding Section 1920 costs to The SFWMD. Plaintiffs cite *Crawford Fitting Co.*, 482 U.S. at 442, for the proposition that Rule 54(d) allows the district court to exercise discretion in denying taxable costs. (*See* Pls.' Obj. and Resp. 5–6). Plaintiffs acknowledge, however, that a district court's discretion in awarding taxable costs is not unlimited. (*See id.* 6 (citing, *inter alia*, *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1355–56 (11th Cir. 2005) (stating that a district court "must give a reason for its denial of costs")).

The district court may, in the exercise of "sound discretion," overcome the presumption in favor of awarding Section 1920 taxable costs. 10 CHARLES ALAN WRIGHT, ET AL., FEDERAL

Case No. 02-80309-CIV-ALTONAGA

PRACTICE AND PROCEDURE § 2668 (3d ed. 1998).  While the Supreme Court in *Crawford Fitting* rejected the notion that Rule 54(d) "is a separate source of power to tax as costs expenses not enumerated in § 1920," the Court made clear that Rule 54(d) "is phrased permissively because Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party." *Crawford Fitting*, 482 U.S. at 441–42.  Thus, a district court's discretion under Rule 54(d) "is solely a power to decline to tax, as costs, the items enumerated in § 1920." *Id*. at 442.  *See also Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1526 (11th Cir. 1985) ("In the exercise of sound discretion, trial courts are accorded great latitude in ascertaining taxable costs.").  The district court's discretion to decline to tax enumerated costs applies equally to costs of appeal under Appellate Rule 39(e), which is also phrased permissively.  *See Campbell v. Rainbow City, Ala.*, 209 F. App'x 873, 875 (11th Cir. 2006).

### 1.    *Change in the Law*

District courts require a "persuasive reason" to deny Section 1920 enumerated costs to a prevailing party.  WRIGHT ET AL., *supra*, *id*.  The persuasive reason urged by Plaintiffs and the Tribe is that the SFWMD only prevailed on appeal due to an intervening change in the law, between the December 11, 2006 Order and the Eleventh Circuit decision.  The change in the law they identify, again, is the new EPA Regulation clarifying that water transfers are not subject to NPDES permitting requirements — a Regulation that did not exist at the time of trial.  Plaintiffs and the Tribe contend that the Court is allowed to consider this factor in equity given language in the decision in *Coyne-Delany Co. v. Capital Development Board of Illinois*, 717 F.2d 385 (7th Cir. 1983).

In *Coyne-Delany*, the Seventh Circuit found that the district court had improperly considered certain factors in denying the prevailing party its Rule 54 costs, but the court nevertheless declined

9

to hold that the prevailing party was entitled to its costs as a matter of law, noting that the district court had alluded to a proper factor in support of its ruling — change in the applicable law. *Id*. at 392. The court stated, "[w]e do not believe that a change in the law is always a good ground for denying costs and injunction damages to a prevailing party, but it is a legitimate consideration, perhaps especially where the prevailing party is a state agency that benefited from a change in the law of its state." *Id*. at 392–93.

The SFWMD asserts that the Regulation changed no law. (*See* SFWMD's Resp. 2). Rather, in the Regulation, the EPA "merely codified the law it had implemented since enactment," and for over forty years NPDES permits had not been issued for water transfers. (*Id*.). The SFWMD further contends that Plaintiffs lost on appeal because their arguments were wrong about the CWA's ambiguity, or lack thereof. (*See id*. 4). Plaintiffs reply that the EPA's "unitary waters" theory was not longstanding, and that it was "a perennial loser" in the courts prior to the Regulation's issuance, as acknowledged by the Eleventh Circuit. (Pls.' Reply 1–2 (citing *Friends of the Everglades*, 570 F.3d at 1217)). Plaintiffs further emphasize that the change in the law is all the more significant given that the SFWMD itself engaged in advocacy in favor of getting the new Regulation issued, a fact that the SFWMD does not deny. (*See* Pls.' Obj. and Resp. 10–12; Pls.' Reply 2). Magistrate Judge Brown concludes in the Supplemental Report that to the extent the Regulation was a change in the law, it was ultimately due to the EPA's action, not the SFWMD's. (*See* Supp. Rep. 8). Furthermore, Judge Brown states that the SFWMD's appeal was ultimately successful because the Eleventh Circuit disagreed with the Court and found the CWA's language to be ambiguous, not just because of any supposed change in the law. (*See id*.)

The Court finds that the Regulation is an intervening change in the law, and thus constitutes

Case No. 02-80309-CIV-ALTONAGA

an equitable factor weighing against the SFWMD's presumptive entitlement to its taxable costs. The contention that the appeal was successful because the CWA is ambiguous, and not because of the Regulation's issuance, fails to persuade. It is precisely *because* the CWA was found to be ambiguous that the Regulation constituted a change in the law. Had the Eleventh Circuit held the relevant language of the CWA to be *unambiguous*, whether in requiring an NPDES permit for water transfers or not, examining the Regulation would have been unnecessary, as the CWA itself would have provided all the guidance necessary on that point. Instead, under an ambiguous statute, the state of the law after the Regulation's issuance was different from before its issuance. As the Eleventh Circuit made clear, the state of the law prior to the Regulation was that "all of the existing precedent and the statements in our own vacated decision are against the unitary waters theory." *Friends of the Everglades*, 570 F.3d at 1218. The court continued, "[i]f nothing had changed, we might make it unanimous. But there has been a change. An important one," *i.e.*, the Regulation. *Id.* The court stated that the issuance of the Regulation led to a question of first impression before the court — whether the Regulation merited *Chevron* deference. *See id*.

The new Regulation is a change in the law because it very likely affected the outcome on appeal.[3] The change was that the Eleventh Circuit, unlike the trial court, was faced with a Regulation requiring *Chevron* analysis. The fact that this was a change in the law is reflected in the Eleventh Circuit's discussion of its decision in *Miccosukee Tribe v. South Florida Water Management District*, 280 F.3d 1364 (11th Cir. 2002), in which the court stated that, with respect

---

[3] *Cf. Unity Ventures v. Cnty. of Lake*, No. 81-C-2745, 1989 WL 88245 (N.D. Ill. July 31, 1989) (applying *Coyne-Delany* and holding that where the plaintiffs lost on the merits in district court, changing law on ripeness had no bearing on outcome of case and did not overcome presumption of awarding costs under Rule 54(d)).

Case No. 02-80309-CIV-ALTONAGA

to the NPDES permitting requirement for water transfers, it could "ascertain no EPA position applicable to S-9 to which to give *any* deference, much less *Chevron* deference." *Id*. at 1368 n.4. The Eleventh Circuit explained that "[n]ow there is an EPA regulation that poses the *Chevron* issue missing from the *Miccosukee* case," *Friends of the Everglades*, 570 F.3d at 1222, an issue that affected the outcome *because* the CWA was found to be ambiguous. The fact that the SFWMD apparently participated to some degree in the issuance of the new Regulation is not dispositive, but if anything lends this equitable factor more weight.

### 2.   *Closeness and Difficulty of the Case*

However, even more persuasive to the Court than the change in the law is that this was a close and difficult case, involving novel and complex issues of fact and law. *See* WRIGHT ET AL., *supra*, *id*. (explaining that courts have denied costs where "the losing party prosecuted the action in good faith, [and] the issues presented were difficult, novel, or complex"). In *United States ex rel. Pickens v. GLR Constructors, Inc.*, 196 F.R.D. 69 (S.D. Ohio 2000), a relator brought a *qui tam* suit under the False Claims Act ("FCA") for "dumping oily bilge slop" from boats engaged in government contract work. *Id*. at 70. The court in *Pickens* explained that the Sixth Circuit has denied costs in "several 'close and difficult' cases involving numerous parties, exhibits, transcript pages, and lengthy opinions." *Id*. at 73 (citing *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 732 (6th Cir. 1986), *U.S. Plywood Corp. v. Gen. Plywood Corp.*, 370 F.2d 500, 508 (6th Cir. 1966)). The court stated that it

> was a close, competitive, hard fought, and difficult case for both sides. The facts and legal issues that comprised this action make it a close case warranting the denial of Defendant's costs. For example, the Parties were required to recognize, sift through, organize and discern the relevant facts, issues, and law of a complicated FCA case.

12

Case No. 02-80309-CIV-ALTONAGA

> Moreover, novel legal issues dominated this litigation which applied the FCA to allegations of environmental violations under governmental contracts.

*Id*. at 76.

The court in *White & White*, 786 F.2d 728, found the following factors were sufficient to support the district court's decision to deny costs to the prevailing party under Rule 54(d): "the plaintiffs' good faith, the defendant's unnecessary costs, and the difficulty of the case." *Id*. at 732–33. While the Court finds the SFWMD's taxable costs were necessary, the other two factors are present in the instant matter. In assessing the difficulty of the case, the court in *White & White* noted that "the case involved complex issues requiring protracted litigation," including 80 trial days, 43 witnesses, 800 exhibits, and close to 15,000 pages of transcript, all of which led to a 95 page opinion. *Id*. The court stated, "[t]he closeness of a case is judged not by whether one party clearly prevails over another, but by the refinement of perception required to recognize, sift through and organize relevant evidence, and by the difficulty of discerning the law of the case." *Id*. at 732–33. *See also U.S. Plywood Corp.*, 370 F.2d at 508 ("At best this can only be described as a close and difficult case. The District Judge did not abuse his discretion in requiring each party to pay its own costs."). In this case, the bench trial lasted for two months, the Eleventh Circuit recognized that it was reviewing a question of first impression, *see Friends of the Everglades*, 570 F.3d at 1218, and the Eleventh Circuit acknowledged the extensive fact-finding process involved at trial, *see id*. at 1216 n.4. This was a close, difficult, and complex case.

Case No. 02-80309-CIV-ALTONAGA

**3.**     *Benefit to the SFWMD*

A further consideration is that the SFWMD has benefitted from this litigation by gaining judicial approval of its practices and procedures.[4]  In *Rosser v. Pipefitters Union Local 392*, 885 F. Supp. 1068 (S.D. Ohio 1995), the plaintiffs brought claims of race discrimination against the defendant under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964.  *See id.* at 1069. In denying an award of costs, the court found persuasive that, among other factors including the losing parties' good faith and propriety and the difficulty and closeness of the case,

> [t]he defendants . . . have benefitted from this case in that they have vindicated themselves from an adverse finding of discrimination by the EEOC and established the validity of the practices and procedures which have been followed by the Union over a long period of time; practices and procedures which have served the Union and its members very well and under which they have prospered.  This affirmation of the Union's practices and procedures is of great importance to the Union defendant and benefits all of its members.

*Id.* at 1072.[5]  Likewise, the SFWMD has gained a valuable benefit in being able to proceed with its permitting practices, or lack thereof, with greater certainty under the new legal regime in light of the Eleventh Circuit's decision in conjunction with the new Regulation.

**4.**     *Good Faith of Plaintiffs and the Tribe*

Moreover, the Court acknowledges that "[t]he good faith of unsuccessful litigants is a

---

[4]  The Court is unconvinced by the SFWMD's argument that its failure to issue permits for water transfers constituted the rule of law simply by virtue of being the norm for decades.  (*See* SFWMD's Resp. 2).  A practice is not legal just because it is longstanding.

[5]  The district court in *White & White* found that the defendant had benefitted from the antitrust action brought by the plaintiffs by gaining judicial approval of its marketing practices, and that the public had benefitted from the action by having the industry's competitiveness assured. *See* 786 F.2d at 730–31. The appeals court nevertheless did not analyze these factors in the district court's opinion because other factors were sufficient to support the district court's decision. *See id.* at 733.

14

relevant consideration in Rule 54(d) deliberations.  Good faith, without more, however, is an insufficient basis for denying costs to a prevailing party." *White & White*, 786 F.2d at 731 (citing *Coyne-Delany*, 717 F.2d at 390).  The Court finds that Plaintiffs and the Tribe acted in good faith in bringing this litigation to enforce the CWA.  As evidenced by this discussion, however, the Court does not rely solely on this consideration as support for its decision.

### 5.        *Effect on Other CWA Plaintiffs*

In addition, a full award of costs against Plaintiffs and the Tribe could have a chilling effect on future plaintiffs bringing claims for enforcement of the CWA in good faith, particularly given the often complicated nature of such suits. *See Pickens*, 196 F.R.D.  at 77 (finding that "it is likely that a chilling effect on future FCA relators is likely if this Relator is taxed costs in such a complex case as the one before us now.") (citation and internal quotation marks omitted).

Therefore, the change in the law, the difficulty and closeness of the case, the benefit to the SFWMD, the good faith of Plaintiffs and the Tribe, and the potential effect on other CWA plaintiffs are all equitable considerations weighing against a full award of costs to the SFWMD.  While the Court awards the $541.80 in Mandate Fees to the SFWMD as taxed directly by the Eleventh Circuit, the Court declines to award the $455.00 in Clerk Fees to the SFWMD.

### 6.        *Use of Trial Transcripts by All Parties*

With respect to the $26,213.68 in Transcript Fees, the Court finds a final equitable factor merits consideration.  That is the SFWMD's contention that it agreed with all parties to "front" the costs of the trial transcripts, with the understanding that the SFWMD "would be made whole at the end."  (SFWMD's Resp. 5).  The SFWMD asserts, and Plaintiffs and the Tribe do not deny, that Plaintiffs and the Tribe used the trial transcripts as much as the SFWMD did itself, if not more so,

and that the email copy of transcripts went to each party every day. (*See id*.). The Court itself cited

the transcripts throughout its December 11, 2006 Order. Weighing the equities for and against an

award of transcripts, with the presumption in favor of awarding costs under Rule 54, the Court orders

that Plaintiffs and the Tribe are liable to the SFWMD for half the cost of the transcripts, or

$13,106.84.

> **C.      The Clean Water Act does not provide the SFWMD with any basis for recovering costs in addition to those under Rule 54, Appellate Rule 39, and Section 1920.**

The SFWMD also seeks its costs under Section 1365 of the CWA ("Section 1365"). Section

1365(d) states

> The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate. . . .

33 U.S.C. § 1365(d). The language of Section 1365(d), if anything, appears to be more permissive

and to create less of a presumption in favor of awarding costs than Rule 54, which states that costs

"*should* be allowed to the prevailing party" unless the court determines otherwise. FED. R. CIV. P.

54 (emphasis added). Section 1365(d) only provides that the court "*may* award costs." 33 U.S.C.

§ 1365(d) (emphasis added). Section 1365(d) therefore plainly allows the court to exercise its sound

discretion in a decision to award or deny costs for citizens' suits under the CWA.

As Magistrate Judge Brown and the parties point out, *Ruckelshaus v. Sierra Club*, 463 U.S.

680 (1983), is a Supreme Court case examining language very similar to Section 1365(d), but in the

Clean Air Act ("CAA"). In *Ruckelshaus*, the Supreme Court determined that analysis of the

legislative intent of the CAA provision, and the meaning of the word "appropriate," required

"reference to other sources." *Id.* at 683. Among other factors relating to attorneys' fees and irrelevant here, the Court's most extensive discussion is of the legislative history of the CAA provision, including the Senate Report. *See id.* at 686–93. As Magistrate Judge Brown states, the Senate Report for the CWA provides that the CWA "establishes citizen participation in the enforcement of control requirements and regulations created in this Act." (Supp. Rep. 5 (citing S. Rep. No. 92-1236, at 3822 (1972))). Given the purpose of the CWA, the equitable considerations discussed above with respect to Section 1920 are also relevant here. Plaintiffs and the Tribe brought this suit in order to enforce the CWA and succeeded at the trial level. Their efforts led to the issuance of a new Regulation clarifying and, in effect, changing the state of the law. This action is unquestionably within the scope of the types of citizen suits envisioned by the CWA — suits which should not be overly discouraged by full cost awards in the context of meritorious and complex litigation. The Court therefore sees no independent basis in Section 1365(d) to award any additional costs to the SFWMD than those costs provided for in Rule 54 and Appellate Rule 39.

**D.    The Tribe is liable for costs as a Plaintiff-Intervenor.**

Magistrate Judge Brown found that due to its substantial involvement in the case, the Tribe should be treated "like any other prevailing or losing party, as the case may be." (Supp. Rep. 8 (quoting *Am. Trucking Ass'n, Inc. v. Interstate Commerce Comm'n*, 666 F.2d 167, 169 (5th Cir. 1982)). Judge Brown further noted that any public interest the Tribe promoted could also be said of Plaintiffs. (*See id.*). The Tribe denies its responsibility for costs as an intervenor, citing case law standing for the proposition that when an intervenor takes a position that "reasonably attempted to advance the implementation of the [CWA]," then it is inappropriate to award fees and costs against that intervenor. (Tribe's Obj. 10 (citing *Miccosukee Tribe of Indians of Fla. v United States*, No. 09-

Case No. 02-80309-CIV-ALTONAGA

50533-CIV, 1999 WL 33320443, at *5–6 (S.D. Fla. Apr. 16, 1999)).  Plaintiffs, however, argue that *Miccosukee* involved an award of attorneys' fees under the CWA, not taxable costs, and is therefore inapposite here.  (*See* Pls.' Obj. and Resp. 2–3 n.1).  The SFWMD, moreover, claims that the Tribe was "as active as any parties," often taking positions contrary to Plaintiffs and playing an important role in litigation strategy.  (SFWMD's Obj. 6).  The SFWMD asserts that treating the Tribe as a mere intervenor without the responsibilities of a party to the suit is to place "form over substance."  (*Id*.).

Plaintiffs are correct that the question before the court in *Miccosukee* was whether to award attorneys' fees, not taxable costs.  The different considerations involved with awarding attorneys' fees as opposed to taxable costs are reflected in Rule 54(d) itself.  *See* FED. R. CIV. P. 54 advisory committee's notes (noting that Rule 54(d) was amended to provide for a separate procedure to recover attorneys' fees, as opposed to taxable costs, to address "frequently recurring" litigation over attorneys' fees).  Thus, the *Miccosukee* decision did not address the same issues as those before the Court.  Moreover, the court in *Miccosukee* made much of the distinction between private-party intervenors and governmental parties — a distinction relevant in that case since two of the three defendant-intervenors in *Miccosukee* were private entities,[6] whereas the named defendants were the United States, the EPA, and two EPA administrators.  *See* 1999 WL 33320443, at *5.  In the instant action, all of the Plaintiffs are non-governmental organizations that brought a citizens' suit in an "attempt[] to advance the implementation of" the CWA.  *Id*.  In that respect, their position is no different than that of the Tribe's.  *Miccosukee* therefore does not absolve the Tribe of its

---

[6]  The third defendant-intervenor was the Secretary of the Florida Department of Environmental Protection, charged under Florida law with administering and enforcing Florida's environmental laws.  The court's discussion, however, focused on the difference between private parties and governmental entities in Supreme Court jurisprudence.

18

Case No. 02-80309-CIV-ALTONAGA

responsibility to share the costs with Plaintiffs.

The Tribe's responsibility for costs is established in cases suggesting that, with respect to taxable costs, intervenors are no different than named parties to an action. *See Delta Airlines, Inc. v. Civil Aeronautics Bd.*, 505 F.2d 386, 388 (D.C. Cir. 1974) (finding that the question of whether costs were taxed for or against intervenors was not often discussed in court opinions, but that "the prevailing practice has been to treat intervenors in agency actions like any other prevailing or losing party, as the case may be"). The decision in *Andrews v. United States*, No. 4:05-cv-419, 2008 WL 750565 (E.D. Tex. Mar. 19, 2008), is relevant here. In *Andrews*, the plaintiff-intervenors decided to forgo their right of appeal against the defendant Government, in exchange for the Government's agreement not to seek Rule 54(d) costs against them. *See id*. at *1. The named plaintiffs appealed, however, and when the Government prevailed it sought Rule 54(d) costs against the plaintiffs. *See id*. The court held that since the intervenors had forgone their right of appeal in order not to pay Rule 54 costs, it would be inequitable not to impose these costs against the plaintiffs. *See id*. The court's ruling assumed, therefore, that costs otherwise would have been taxed against the intervenors, had it not been for their explicit agreement with the Government.

The Tribe is therefore liable for taxable costs to the same extent that Plaintiffs are.

### E.     Plaintiffs and the Tribe are jointly and severally liable for taxable costs.

Plaintiffs and the Tribe contend that although joint and several liability is the default rule, the district court may apportion costs as it sees fit, out of equitable considerations. (*See* Pls.' Obj. and Resp. 13; Tribe's Resp. 5). They contend that equity dictates the equal apportionment of costs among parties in this matter, rather than joint and several liability. (*See id*.). The SFWMD argues that Plaintiffs make no "principled argument" justifying apportionment rather than joint and several

19

Case No. 02-80309-CIV-ALTONAGA

liability, and that the SFWMD should not bear the burden of holding each party responsible for its share.  (SFWMD's Resp. 6).

It is within the Court's discretionary power to apportion taxable costs among parties.  *See* WRIGHT ET AL., *supra*, *id*.  However, the Court does not find that equitable considerations in this case overcome the burden that would be placed on Defendants by forcing them to seek their costs from four separate entities, when there is no apparent reason why Plaintiffs and the Tribe could not coordinate payment among themselves as they have coordinated on so many other matters throughout this litigation.  Plaintiffs and the Tribe are therefore jointly and severally liable on amounts owed to Defendants as taxable costs.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Supplemental Report **[ECF No. 801]** is **ADOPTED in part and REJECTED in part**, and the Motion **[ECF No. 770]** is **GRANTED in part and DENIED in part**.

2. Plaintiffs, Friends of the Everglades, Fishermen Against Destruction of the Environment, and The Florida Wildlife Federation; and Intervenor-Plaintiff, the Miccosukee Tribe of Indians of Florida, are jointly and severally responsible for payment of **$13,648.64** to Defendants, South Florida Water Management District, and the Executive Director of the South Florida Water Management District.

20

Case No. 02-80309-CIV-ALTONAGA

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20th day of September, 2011.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record